## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CALVIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 07 C 3370 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In April 2007, Administrative Law Judge ("ALJ") Shirley Michaelson determined that Calvin Johnson was not disabled within the meaning of the Social Security Act. Johnson now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court affirms the ALJ's decision.

## Facts

In 1991, Calvin Johnson suffered a gunshot wound that destroyed his right ankle joint. (Admin. R. ("AR") 83, 188.) Nonetheless, after several surgeries and physical therapy, he was able to work. (*Id.* 84, 127.)

From November 1998 until October 2004, Johnson was a printer for a container manufacturer, a position that required him to run or walk quickly among various machines throughout his shift. (*Id.* 84.) Johnson quit that job in October 2004 because, he said, his ankle had deteriorated over time and the pain had become too severe for him to work. (*Id.* 177-80.)

At a hearing in March 2007, however, Johnson testified that he had not consulted a doctor about the pain in his ankle and did not take any prescription pain medication for it. (*Id.* 180.) Moreover, though he said he had difficulty walking, he also said he did not use a cane or other assistive device. (*Id.* 198.)

When he was asked about his ability to work, Johnson said he could stand as long as he was leaning against something, but could not be a cashier at a video store, for example, because "people . . . don't want to see you leaning up against something, or sitting . . . down when you [are] not [supposed] to." (*Id.* 184.) Further, he said he could not perform a sit down job, like a toll booth operator, because his leg becomes "very irritating" when it stays in one position all the time. (*Id.* 185.)

A medical expert who testified at the hearing said that Johnson's right ankle joint was destroyed, which prevented him from moving his foot up and down. (*Id.* 188.) He also said that Johnson has reduced strength in his right leg below the knee. (*Id.*) Overall, the expert concluded, Johnson should be able to:

> Lift 20 pounds occasionally, ten pounds frequently. That he could stand/walk at least two hours in an eight-hour day. He could sit for six hours in an eight-hour day. Pushing and pulling weight the upper extremities would be limited to the weights which I have given. As they would in the lower extremities.

(*Id.* 190.) In the medical expert's opinion, there was no reason Johnson "couldn't do a sit down job with these other limitations, eight hours a day, five days a week." (*Id.* 192.)

A vocational expert also testified at the hearing. He said that Johnson's restrictions did not "significantly erode the occupational base at the sedentary exertion level." (*Id.* 195.) According to the vocational expert, even with his restrictions, Johnson could still work as, among other things, a bench assembler, production inspector, hand packer, and sedentary cashier. (*Id.* 195-96.)

2

After the hearing, ALJ Michaelson issued a decision finding that Johnson was not disabled

because, given his "age, education, work experience, and residual functional capacity, the claimant

has been capable of making a successful adjustment to other work that exists in significant numbers

in the national economy." (*Id.* 36.)


## Discussion

The Court reviews the ALJ's conclusions of law *de novo* and will affirm her factual

determinations if they are supported by "substantial evidence." *Prochaska v. Barnhart*, 454 F.3d

731, 734 (7th Cir. 2006). "Evidence is substantial when it is sufficient for a reasonable person to

conclude that the evidence supports the decision." *Id.* at 735.

Johnson contends that the ALJ's decision is erroneous for three reasons: (1) she failed to

obtain a valid waiver of counsel from Johnson and, in the absence of counsel, to develop the record

thoroughly; (2) improperly analyzed the requirements of the impairment listed in 20 C.F.R. Pt. 404,

Subpt. P, App. 1 § 1.02 ("§ 1.02 Listing"); and (3) improperly judged Johnson's credibility.


### Waiver

The Social Security Act gives claimants a right to be represented at a disability hearing.

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing 42 U.S.C. § 406). Under the law of this

circuit, a claimant can validly waive that right only if the ALJ explains to him: "(1) the manner in

which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency

arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required

court approval of the fees." *Id.* (quotation omitted). The ALJ confirmed that Johnson had chosen

3

his non-attorney cousin, Calvin Johnson, as his representative (*see* AR at 169-70), but she did not give him the information that is required in this circuit for a valid waiver. (*See id.*)

Defendant says a waiver was not required in this case because federal law permits claimants to be represented either by an attorney or a non-attorney who meets certain qualifications. *See* 42 U.S.C. § 406(a)(1) ("The Commissioner of Social Security may prescribe rules and regulations governing the recognition of . . . persons, other than attorneys . . . , representing claimants before the Commissioner of Social Security . . . ."); 20 C.F.R. §§ 404.1703, 416.1503 (defining "[r]epresentative" as "an attorney . . . or a person other than an attorney who meets all of the requirements of § 404.1705(b) [or § 416.1505(b)]" whom the claimant appoints to represent him); *id.* §§ 404.1705(b), 416.1505(b) (stating that a claimant may appoint a non-attorney as his representative if the person is: (1) "generally known to have a good character and reputation;" (2) "capable of giving valuable help" to the claimant; (3) "not disqualified or suspended [by the Social Security Administration] from acting as a representative;" and (4) "not prohibited by any law from acting as a representative"). Because the record establishes that Johnson chose his cousin as his representative and his cousin was qualified to play that role (*see* AR at 169-70), defendant says a waiver of counsel was not required.

Even if a waiver was required in this case, an issue the Court does not decide, the ALJ's failure to secure one would mandate a remand only if she also failed to develop the record "scrupulously and conscientiously." *Skinner*, 478 F.3d at 841 (quotation omitted). Such is the case here, Johnson says, because the ALJ did not: (1) adequately question him about the pain he experiences; (2) elicit testimony from him about his need to elevate his ankle to relieve swelling; (3) ask the medical expert whether Johnson's condition was degenerative and whether his purported

4

limitations were consistent with that condition; and (4) adequately question the vocational expert about his methodology and conclusions.

The record refutes Johnson's first two contentions. At the beginning of the hearing, the ALJ told Johnson that she needed to know "what changed with [his] foot between 2001 and now" such that he could work from 2001 to 2003 but had to stop in 2004. (AR 176.) Through his representative, Johnson said that his condition had worsened over time and his pain had increased. (*Id.* 177, 180.) Johnson said that: his "ankle always bother[s] him;" the pain is generally a seven on a one-to-ten scale; the pain increases when he walks a half block or more; he has to turn his right leg or stretch it out when he is seated to avoid having his leg stiffen up; he can only sit comfortably for twenty or thirty minutes consecutively; his ankle swells several times a week; and he needs to elevate his foot for about an hour each day to relieve the pain (*Id.* 179-84, 187-88, 202-03).

But Johnson also told the ALJ that he had not consulted a doctor about the deterioration of his ankle or the increased pain and was not being treated or medicated for either condition. (*Id.* 177, 180.) Johnson also told her that he does not wrap or take any other measures to reduce the swelling when it occurs, does not use a cane to walk, and can stand as long as he is leaning against something. (*Id.* 184, 187-88, 198.)

In addition, the ALJ had evidence from medical experts who said that though Johnson's right ankle joint was destroyed and the strength in his lower right leg was reduced, he had a normal gait, can walk fifty feet normally, could stand or walk for two hours and sit for six hours in an eight-hour work day, and "could[ ] do a sit down job . . . , eight hours a day, five days a week." (*Id.* 188, 190-92 (testimony of medical expert); *see id.* at 127-30 (report of Dr. Patil).)

5

Given all of this evidence, the Court finds that the ALJ fully and fairly developed the record with respect to the pain and swelling Johnson experiences.

Moreover, though the ALJ did not ask the medical expert whether Johnson's condition is degenerative or could cause the limitations Johnson reports those omissions do not make the record deficient. The medical expert did not use the word "degenerative," but he concluded that plaintiff needed a sit down job because he "credit[ed]" Johnson's testimony about "the wasting of his foot, the loss of strength, [and] his complaints of pain when he uses his leg." (*Id.* 192.) In other words, the medical expert assumed, as Johnson testified, that his condition had worsened over time. Moreover, the ALJ specifically noted in her decision that Johnson said his "treating physician had told him that his condition would worsen over time." (*Id.* 32-33.)

The Court is also not persuaded that the ALJ's failure to question the vocational expert more extensively is fatal to the record. (*See* Pl.'s Br. Supp. Mot. Summ. J. 8 (arguing that, due to insufficient questioning, "any discrepancies between [the vocational expert's] testimony and the *Dictionary of Occupational Titles*, or any problems with the reliability of his methodology were not noted for the record").) The vocational expert, who said his conclusion conformed with "the DOT," opined that there were more than 15,000 sedentary jobs that Johnson could perform. (*Id.* 196-97, 207.) Perhaps, in response to further questioning, the expert would have reduced that number somewhat. But Johnson did not argue that he cannot work because there is a lack of sedentary jobs in this region. Rather, he argued that his medical condition makes him *incapable of performing* sedentary work, an assertion about which the vocational expert did not and could not opine. Because Johnson's claim was based on his capacity to work, not the availability of suitable work, further questioning of the vocational expert would not have furthered his case.

In sum, even if the ALJ was required to and did not obtain a valid waiver of counsel, issues the Court does not decide, her failure to do so was harmless because she fully and fairly developed the record on Johnson's claim.

## Analysis of § 1.02 Listing

Plaintiff also contends that the ALJ improperly analyzed the applicable listed impairment, which requires:

> Major dysfunction of a joint[] . . . [c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint[], and findings . . . of . . . bony destruction . . . . [w]ith:

> Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined ion 1.00B2. . . .

§ 1.02 Listing. The inability to ambulate effectively means:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

7

20 C.F.R. pt. 404, subpt. P, App. 1 § 1.00(b)(2). Johnson says that the ALJ determined that he did meet the listing simply because he does not use an assistive device to walk, a conclusion not supported by the listing.

Johnson's argument is based on two statements the ALJ made at the hearing: (1) "Ineffective ambulation means, you need a cane, you need a wheelchair, you need a walker;" and (2) "Dr. Patel [sic] said [Johnson] had a normal gait, .... [w]hich means ... he's barely limping. And ineffective ambulation means he couldn't even walk." (AR 197.) Contrary to Johnson's assertion, these comments are wholly consistent with the language of the listing. *See* 20 C.F.R. § 404 subpt. P, App. 1 § 1.00(B)(2) ("Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) ...."). Further, they summarize only a part of the evidence from which the ALJ concluded that Johnson did not meet the listing. She also considered: (1) Dr. Patil's report stating that Johnson had a normal gait and walked fifty feet normally; (2) the "Daily Living Questionnaire" Johnson had completed, in which he said he could climb twenty stairs and could shop or cook for thirty minutes before needing to rest; (3) the medical expert's testimony that Johnson "is ambulating effectively" and could "stand/walk at least two hours in an eight-hour day" (4) Johnson's testimony that he does not "ever walk with a cane;" (5) his cousin's testimony that Johnson "could certainly benefit from us[ing] a cane" but "chooses ... not to use [one];" and (6) her own observation of Johnson walking into the hearing unassisted (AR 28-36, 103, 129, 188, 190, 197-99, 205). Because the ALJ's comments are consistent with § 1.02 Listing and her conclusion that Johnson did not meet that or any other listing is amply supported by the record, the Court finds no fault with her analysis.

## Credibility

Johnson's last contention is that the ALJ did not properly assess his credibility. The Court gives the ALJ's credibility determination "considerable deference" and will "overturn it only if [it is] patently wrong." *Prochaska*, 454 F.3d at 738 (quotation omitted). The regulations require the ALJ to "evaluate the intensity and persistence of [a claimant's] symptoms" to determine how they limit his ability to work. 20 C.F.R. § 404.1529(c)(1). In making that evaluation, the regulations instruct the ALJ to consider "any symptom-related functional limitations and restrictions . . . [that] can reasonably be accepted as consistent with the objective medical evidence" including: (1) the claimant's "daily activities;" (2) "[t]he location, duration, frequency, and intensity" of the claimant's "pain or other symptoms;" (3) "[p]recipitating and aggravating factors;" (4) "[t]he type, dosage, effectiveness, and side effects of any medication" taken "to alleviate . . . pain or symptoms;" (5) any treatment the claimant receives or measures he takes for relief of pain or symptoms; and (6) "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3). The regulations tell claimants that the ALJ:

> will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence .
> . . . Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4). In determining whether there are inconsistencies, however, ALJs are told not "[to] draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations . . . or other information in the case record . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." Titles II and XVI: Evaluations of Symptoms in Disability

9

Claims: Assessing the Credibility of an Individual's Statements, S.S.R. 96-7P, 1996 WL 374186, at *7 (July 2, 1996).

Johnson says the ALJ violated these principles because she did not consider Johnson's explanations for his failure to seek medical treatment for his pain: he could not afford it and thought amputation, which he did not want to pursue, was the only medical option. In fact, the record shows that the ALJ considered both explanations. She rejected the former because Johnson, who spent a month in Stroger Hospital, a facility that provides free medical care, immediately following his injury, had not returned there for treatment. (AR 180-81; *see id.* 33 ("[T]here is no evidence that the claimant has even pursued free or reduced health care options, which one might expect if the claimant truly was experiencing the pain and other symptoms he describes.").) Moreover, she rejected the latter because Johnson did not even investigate treatment options other than amputation, like prescription pain medicine or the use of a cane. (*Id.* 181, 188.)

Johnson also argues that the ALJ improperly rejected his testimony about the severity of his pain, which was corroborated by Dr. Patil, without explaining why she had done so. Again, the record refutes Johnson's contention. First, Dr. Patil noted, but did not – indeed, because pain cannot be objectively measured, could not – corroborate Johnson's testimony about the severity of his pain. (*See generally id.* 127-30.) Second, the ALJ fully explained why she rejected Johnson's testimony. (*See id.* 33-34 (stating that Johnson's complaints were not "entirely credible" in light of Dr. Patil's report that Johnson had "a normal gait, and no deformity, swelling, tenderness or redness of any joint," and Johnson's testimony that he does not take prescription pain medication, takes over-the-counter pain relievers only occasionally, has not sought any medical treatment for his pain, and walks without a cane or other assistive device).)

Johnson also contends that the ALJ improperly rejected his claim that his condition had become progressively worse since he sustained the wound in 1991. The record shows that the ALJ did no such thing. On the contrary, she specifically noted Johnson's testimony that his "treating physician had told him that his condition would worsen over time" and gave "the greatest weight" to the testimony of the medical expert, who "credit[ed]" Johnson's testimony about "the wasting of his foot [and] the loss of strength" in his right leg. (*Id.* 32-34, 192.)

As the ALJ stated, however, the issue was not whether Johnson's ankle was worse in 2007 than it had been in 1991, but whether it had significantly deteriorated between 2001, when he earned more than $26,000.00, and October 2004, when he claimed he could no longer work. (*Id.* 174-76.) The ALJ said "there [was] no objective evidence" that it had, a finding the record fully supports. (*See id.* 180 (Johnson's testimony that Dr. Patil, the Social Security Administration's doctor, was the only physician he had seen since 2001); *id.* at 84 (Johnson's work history showing that he held a job that required him to stand and walk from November 1998 through October 2004); *id.* 204 (ALJ saying that "the only . . . objective evidence I have . . . [is] the 2006 exam. . . . I don't have [Johnson's] testimony that he's increased his use of pain medication . . . . [or] he's worried about his left side getting bad because it's compensating for the right[, or] that he's gone to see the doctor about that.")

Finally, Johnson argues that the ALJ improperly allowed her personal observations of Johnson, that he did not use a cane or elevate his leg during the hearing, to inform her credibility decision. The Court disagrees. Johnson does not cite, and the Court has not found, any authority for the notion that personal observations somehow taint an ALJ's credibility determination. In fact, the Seventh Circuit has said just the opposite:

Kelley's contention that an ALJ cannot consider his own observations with respect to the claimant's demeanor and credibility at the administrative hearing in reaching his decision . . . is without merit. . . . We have held that an ALJ does not commit an impropriety when he relies on his own observations during a hearing concerning the severity of a claimant's claim. . . . Credibility findings are reserved for the ALJ, in part because the ALJ is able to observe the witness. . . . [D]eterminations of credibility often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave no trace that can be discerned in this or any other transcript that we review. It would be anomalous to permit the ALJ to base his credibility determination on "inarticulable" and "intangible" impressions but not allow him, as in the case at bar, to base such determinations on clear and concrete observations.

*Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) (quotations and citations omitted). Thus, the

ALJ's reliance on her observations does not cast doubt on her credibility determination.[1]

### Conclusion

For the reasons set forth above, the Court affirms the ALJ's finding that Johnson is not

disabled. Plaintiff's motion for summary judgment [doc. no. 12] is, therefore, denied and this case

is terminated.

**SO ORDERED.**                                **ENTERED:**   3/13/08

HON. RONALD A. GUZMAN
United States District Judge

---

[1] The record shows that the ALJ's observations, that Johnson did not use a cane and sat throughout the almost hour-long hearing, were particularly relevant in this case. The former observation corroborated Johnson's testimony that he does not "ever walk with a cane" and the latter contradicted his testimony that he could sit comfortably for only twenty to thirty minutes consecutively. (*See* AR 169, 184, 188, 208.)